I'll call the case of Canal A. Media Holding v. United States Citizenship and Immigration Services and others. Good morning, Your Honors. This is Edward Ramos on behalf of the plaintiffs. This case is about the proper venue for judicial review of visa petitions that U.S. companies file on behalf of foreign workers. The well-settled understanding has been that challenges like these challenges here belong in district court in actions under the APA. The district court below broke from that well-settled understanding to hold that because the beneficiary of the visa petition is in removal proceedings, judicial review of the visa petition denial is available only through a petition for review of a final removal order against the beneficiary, and it therefore dismissed plaintiff's district court action. The district court relied on three jurisdictional provisions to reach that conclusion, and I can certainly get into the weeds of each of those three, but ultimately, all three of those grounds fail for two basic reasons. The first reason is that the district court's reading at the government's urging would deprive petitioning companies of any judicial review in any form for review of their own visa petitions, and again, the district court's theory is that these claims can be heard only through a petition for review of a noncitizen's final removal order, but that theory of judicial review of visa petition denials deprives companies whose petitions are at issue of any review in any form because the company is not a party to the removal proceedings, and it has no standing to petition for review of a noncitizen's final removal order, and again, that's an astounding result because after all, the regulations are clear that at the administrative level, it's the company's petition, the company files the petition, it pays for the petition, it prosecutes the petition, and only the company has authority to withdraw the petition. The second main issue that I think covers all three of the jurisdictional grounds is that the visa petition denial at issue in this case, like all visa petition denials, are not removable in removal proceedings. That's been clear since at least 1987 from the matter of a Virilio case out of the Board of Immigration Appeals, clear from the immigration court's practice manual, which expressly warns people in removal proceedings that they can't obtain review of a visa petition denial in those proceedings, and it's also clear from the Attorney General's own recent decision in matter of Castro-Tum, which clarified it once again that immigration judges are limited to review of actions that are given to them expressly by regulation, and neither the government nor the district court has pointed to any regulation that gives immigration judges or the Board of Immigration Appeals any authority whatsoever to review these decisions in removal proceedings. And again, because the decisions at issue in this case arose outside of the context of removal proceedings, and because removal proceedings provide no forum for either Mr. Archila or, more importantly, the petitioning company, it makes no sense to channel those claims through the petition for review process. I'd like to turn, with the court's permission, to the APA finality ground that the district court and the government principally rely on. And I think the easiest way for the court to dispose of this issue is just to recognize that USCIS's decision to deny the visa petition is absolutely final with respect to Canal Media, for the reasons that I just mentioned. Canal Media is not a participant in the removal process, and it cannot petition for review of a final removal order. So on the district court's reading, this APA finality ground effectively operates as a complete bar to judicial review. And that's not the purpose of the APA finality provision. The purpose of the APA finality provision is to ensure that there's a full record developed at the administrative level before judicial review. It's not intended to bar parties from seeking judicial review of their own petitions. And on the APA finality point, I also think that the district court and the government, they really haven't grappled with two decisions of this court that I think are dispositive on the finality issue. And those decisions are Perez v. USCIS, which involved the case of arriving aliens applying for adjustment of status to permanent residency, and Mejia Rodriguez v. DHS, which concerned temporary protected status applications. And if you look at the reasoning of this court in both of those cases, the reasoning was very plain. The courts held that USCIS's decisions in those two cases were final agency actions precisely because the parties in those cases could not obtain any judicial review of those decisions in the removal process. And I think those two cases really control the outcome here because it's the same situation. The visa petition denial at issue here and the related change of status application were not reviewable at all before an immigration judge or before the Board of Immigration Appeals. If there are no questions about APA finality, I would like to turn briefly to the two jurisdictional provisions in the Immigration and Nationality Act that the district court and the government also rely on. Yes. Maybe this puts too fine a point on it, but just to be clear, I mean, if we were to affirm, Canal Media would have no way to get review of the decision denying the I-129 visa. Is that? I don't know if I got that right. That's exactly right, Your Honor. And I think that's, I mean, that's one of, that's the principal reason. I think it's the easiest ground that the court could rely on to reverse the district court because the APA finality, again, and that was the principal basis. It's not supposed to operate as a bar to review. It's supposed to ensure a complete record and that it subverts the purpose of the APA finality provision to construe it in that way. Thank you. Sure. If there are no other questions about finality, I would like to turn briefly to the two jurisdictional provisions of the Immigration and Nationality Act that the district court and the government rely on. And those two provisions are 8 U.S.C. 1252 B-9, which is also sometimes called the zipper clause. It's a claim channeling provision. And 8 U.S.C. 1252 G, which is a bar to specific discretionary prosecutorial discretion acts. To begin with B-9, that provision reads in relevant part that all questions arising out of, quote, actions taken or proceedings brought to remove an alien from the United States are channeled through the petition for review process. And you really don't need to get much further than the plain text of B-9 to see that it doesn't apply in this case. The issue in this case, it's a legal challenge to a visa petition denial. And that denial doesn't arise out of an action taken or proceeding brought to remove Mr. Archila from the United States. It's a petition by Canal Media to classify Mr. Archila in a particular visa category under the INA. That decision doesn't confer any status on Mr. Archila. And it certainly doesn't arise out of the removal process. And I think that's well illustrated, again, by the fact that those decisions are not reviewable in the removal process. But I also think that this court's position. And I would point the court to the MADU, the U.S. Attorney General decision, which announced a very narrow reading of B-9. And the court in that decision held that B-9 applies only with respect to an order of removal. So only if you are challenging an order of removal does B-9 kick in. And that's clearly not the case here. The other decision I would point to is Ruiz out of the Second Circuit. And this court cited favorably to Ruiz and Mejia Rodriguez. And I think footnote nine of that, excuse me, footnote three of that decision really breaks down why visa petition denials aren't swept up by B-9. And it's really, again, for the simple reason that a denial of a visa petition is unrelated to any removal action or any removal proceeding. And finally, I'd like to address 1252G. And 1252G is really even narrower than B-9. And again, the text there is it deals with claims that involve the decision or action to commence removal proceedings, excuse me, commence proceedings, adjudicate cases, or execute removal orders. And in the context that it appears, it's clear that it's referring to removal proceedings. And again, the denial of a visa petition or a change of status application to non-immigrant status, it's not an action to commence removal proceedings, to adjudicate a Two minutes, counsel, two minutes. Thank you, Ms. Tisa. The district court was mistaken to invoke 1252G because it doesn't apply to those three discrete acts. 1252G was really geared towards prosecutorial discretion decisions. Decisions, you know, if someone's removable, the decision to decide, well, do we put this person in removal proceedings? Do we have to execute prosecutorial discretion? And each of those three discrete actions along the way to final removal involve some exercise of prosecutorial discretion. And 1252G really gets at that discretion. But again, the decisions at issue in this case don't involve any prosecutorial discretion. Their objective eligibility criteria, does Mr. Archila qualify for an L1A petition? And more specifically, did the company establish a qualifying relationship with a foreign entity? And that decision is far afield from anything that 1252G covers. And if there are no questions, I'll reserve the remainder of my time. Thank you. Good morning, Your Honors. Joshua Press from the Department of Justice here on behalf of the defendant's apologies. Your Honors, what we just heard from the plaintiff's counsel, I think, is a very clever legal argument that, in our opinion, is designed to essentially collaterally attack the ongoing removal proceedings that existed at the time that the original complaint was brought in the Central District of California, which gives us a rather unusual procedural history. But I think the central point is that when removal proceedings are ongoing, I think this court and other courts of appeals have been pretty universal in holding that further administrative remedies exist and need to be exhausted. That's sort of the same background principle of administrative law that's existed for decades with respect to when somebody is in front of an ALJ or another interagency appeals board, further administrative review is available. And therefore, the finality that must exist for APA actions to be brought do not exist and or the case is unripe, as Judge Ginsburg had ruled in Randall v. Meese in a similar context where removal proceedings were an appeal to the DIA was still ongoing. Simply put, we don't think that plaintiff's paraphrasing of B9 or G really gave respect to why those statutory provisions were enacted and tinkered with in 1996 and 2005, because I think what the Supreme Court has been clear about in interpreting them, that they were designed to actually expedite administrative consideration rather than to for the stalling or prolonging of such removal proceedings. And really, I think, Judge Martin, your question with respect to whether county media could ever bring their case on the denied petition, we disagree with opposing counsel's contention that they could never actually bring that case. I think... How do they get review? How do they get review? They're not a part of Mr. Akila's removal proceedings. Yes, that's absolutely correct. I think the way that they would get review is really more reflected in how the legislative history of B9 and G are much more designed as time and manner restrictions. And I think as your Honor's opinion in Lab MD sort of points out, when there are ongoing administrative proceedings, sort of rushing and racing to the federal courthouse is itself premature. And that's not to say that county media... I don't hear an answer to my question. Excuse me. Actually, I feel like I'm yelling, but it's hard for everybody to hear each other. I don't hear an answer to my question. How does Canal Media get review of this decision to deny the visa that they've applied for? They simply have to wait until the proceedings are final. They're not a party to the removal proceedings. They just show up and hang out and see if the IJ will hear from somebody who's not a party? Well, yes. I mean, they can file amicus briefing. Let's say, for example, if there's a petition for review in the case. And you think that's sufficient review under the Administrative Procedures Act? No, I'm not actually saying that. What I'm saying is they have to wait until that is done before the USCIS visa petition that is... The facts of those are in front of the IJ have been concluded because at that point, there will be a finalized, complete administrative record. I think the problem with respect to Canal Media doing it right now is that there is no finalized administrative record. And that was the core of the owner's concern with respect to LabMD and why they were trying... Why it was premature for them to rush into court while they still had a connection with the administrative law judge pending. Because there was no complete record that they could actually rely upon to vindicate their APA interests. So let me be sure I understand. So under your scenario, in the removal proceedings, Mr. Achila loses. Then would Canal Media be able to come to our court to appeal or to... No, no. That's where they could go to district court. I think plaintiff's briefing is replete. I think there's a footnote in there with 30 cases of district court cases, sort of vindicating L1A applications. We understand that. I think that the distinction would be that what would be within the agency's record on the L1A application would be expanded and more fulsome. Can I ask you a question? This is Judge Newsom. Why is what matters what's in the agency's record? Why don't we care about what's in the agency's jurisdiction? I mean, I think Judge Martin's point is why should Canal have to wait on a removal proceeding in which an IJ or the BIA have no jurisdiction to consider this petition denial at all? Well, one thing that we think that's very clear with respect to IRA being enacted in 1996 and the Real ID Act of 2005 is that Congress wanted to channel immigration proceedings specifically to courts of appeals and... So they want to prioritize removal proceedings, not immigration proceedings, removal proceedings. It says arising from a removal proceeding. That is true. But what we're saying is that Congress wanted to prioritize the removal proceedings. And what Canal A&E's theory would do is actually allow for the removal proceedings that Congress clearly wanted to prioritize to actually take a back seat. And that's evidenced by the record in this case with how plaintiff's counsel repeatedly got continuances for years by pointing to this instant litigation in front of the immigration judge. And it was only after the dismissal of this case that the immigration proceedings actually went on a status which will provide Mr. Archill with work authorization to work for not only Canal A&E, but any employer in the United States, is four months from now. And although... And this is reflected in the 28-J briefing, I think, that we provided, Your Honors, in the last week or two. But although it's true, as plaintiff's counsel points out, that we are not going to simply roll on that, it is our understanding based on what the immigration judge has stated, that he intends to grant the adjustment. And once that occurs, there will be not only a complete administrative record, but his administrative remedies, which we have been pointing to for years, will have been vindicated. He will be allowed to work for Canal A&E Media. The Your Honor's hypothetical with respect to when can Canal A&E Media come into court and be able to work for them immediately. This is Judge Watkins. I'm a little bit confused. All right. So Canal Media has... Do you dispute that Canal Media has received the final decision? Yes, we dispute that the final decision with respect to Mr. Archill's immigration status exists. They are using the L1A denial as a piece, as a component of that. But what that would produce if that were seen and viewed by this court as a final agency action would allow for the piecemeal litigation that Congress is explicitly trying to channel and actually preclude in 12-2 to exist. And thus, third parties could file visa petitions, get those claims in the district courts whenever anyone is in removal proceedings. And that's why we think that with respect to jurisdictional for APA purposes, the fact that Mr. Archill was in removal proceedings when the is crucial here. Go ahead, Judge Watkins. Well, I was... So as I understand it, the removal proceedings, which is, you know, you're trying to overturn some... Actually, you're trying to get a negative result if you're the person involved in the proceedings. Those proceedings have been stayed pending the outcome of this case. Is that right? No, Your Honor. The removal proceedings are going forward and the next hearing is in October. That is where we understand the adjustment will be decided on by the immigration judge. But what authority would the immigration judge decide an adjustment, a visa adjustment? Well, Mr. Archill is now married to a United States citizen. In fact, he has a completely independent route. Now, Mr. Press, the question is, does the IJ have jurisdiction to review the visa decision? No. So that is correct. He does not have jurisdiction to review the visa decision, just as in other Supreme Court cases, IJs and the BIA, for example, and, you know, it was argued and submitted to the court that they do not have jurisdiction to review constitutional questions or statutory questions per se, other than those that have been prescribed them with respect to, for example, asylum or adjustment, convention against torture. I assume you have looked at the Aaron Camacho Perez versus USCIS case from the circuit of 2014. I mean, do you think that was wrongly decided? Well, no, I'm not saying any decision by this court is wrongly decided. I think what I'm saying is that if you look at the Supreme Court's sort of explanation of 1222b-9 with respect in Jennings, it is a little broader than this court's case law has allowed for. And in that sense, we understand that five justices in the Supreme Court sort of understand b-9 to be more of a broader claim channeling provision than plaintiff's counsel has been arguing. Well, I'll be just really plain with you. I mean, I read Perez to govern this case in such a way that you lose. Tell me why I'm wrong about my read of Perez. Well, I think, so we addressed these two cases that I think plaintiff's counsel was relying on. We addressed Perez and Mejia Rodriguez. Now, our understanding for Perez was that there was an alien applying for adjustment under the Cuban Adjustment Act while he was in removal proceedings. But even with the removal proceedings taking place, he had, Perez had already exhausted his administrative proceedings prior to the commencement of the proceedings. So what we're saying there is that that actually gets to the distinction. If someone brings their lawsuit while a removal proceeding is ongoing, and they are in the exact same procedural posture as Lab and D, in your Honor's opinion, for that court. Whereas in Perez, if they bring their lawsuit prior to the commencement of the proceedings, then they are not trying to undo the commencement of removal proceedings that Congress was concerned about in trying to channel claims through with b-9 or G. And I think that's sort of, the language in G gets to that point where it's the commencement of removal proceedings. And I think even this court's decision in Madu, which plaintiff cites, sort of gets to the question of if there are, if there is no final order of removal, or implied here with Milano's question to Perez, if there are no removal proceedings, then the commencement is righteous. So to go into district court is fine. And that's consistent with the Third Circuit's interpretation in Pinho. But what we are saying, and what there is a distinct jurisdictional fact here for APA purposes, and especially in light of 1252, is that when there are removal proceedings, Congress has been pretty clear that they want to prioritize those. Because to allow for another- Can I ask you a question? This is Judge Newsom. I know your time's about to expire. Can I ask you a question that is, to me, sort of foundational on the APA side? So in Bennett versus Speer, and I think everybody sort of recognizes that this is the Supreme Court's sort of definitive statement on final agency action, the court says, the first prong, the action must mark the consummation of the agency's decision-making process. In this case, who is the agency in that courtroom? That is a great question. I think in this case, the agency actually encompasses not only DHS, but also the Executive Office of Immigration Review within DOJ. And let me tell you why. When 1252 was enacted in 1996, there was only the INS. And this sort of gets to the Seventh Circuit's opinion in DeKalb from two years ago. To allow for sort of sub-agency claim splitting would defeat the entire purpose of what Congress had envisioned within the IRA of 1996, and how there was only one agency at that point. Because the point here is, as the Sixth Circuit was getting at in JAMA, as that's reflected in Qureshi on the Fifth Circuit, as it's reflected by the Ninth Circuit in Caldecang, is a final determination on immigration status. Now, just because the INS has been broken up into component parts now, after 2002, does not mean that there has been a sea change with respect to how the background administrative exhaustion principles that existed in 1996 should be changed. And so I hope that that answers your Honor's question. Well, I mean, I guess I take your point that INS has been busted up and sent all over the place. But still, it seems to me that in this case, the way matters operate, the agency here, USCIS, and, you know, in the USCIS proceeding, only the company is a party, not the individual. And over in another department of the executive branch, in a removal proceeding, only the individual is a party and not the company. It just seems like there's so much agency jumping here. Well, that's not really what's going on. And that's also, it's important to reflect that plaintiffs are not just suing USCIS, they're also suing the Department of Homeland Security, which brought the removal proceeding in front of them. I mean, they're prosecuting the removal proceedings. So... That's still a different executive department. I mean, not even just a different agency, but a different department. That's true. I think that's why, if you go to DeKalb, on this exact same argument, what was persuasive to the Seventh Circuit was the executive branch having completed its administrative review. And that's how it would normally work in almost all other administrative contexts. The only distinction here is really just the INF being broken up because of unfortunate circumstances in 2001, to say the least. Counsel, time has expired. Well, thank you, Ms. Disa. If there are no further questions, we would ask you to confirm in all respects. Thank you. Mr. Ramos? This is Edward Ramos again. Four quick points. The first is that I didn't hear the government cite to any case where EPA finality or the INA's jurisdictional provisions have been used to deprive a party of judicial review entirely. And the second point is about subverting the administrative process. Actually, the district court review, it's true that it does run in parallel to the removal proceeding, but that respects the administrative process. The Attorney General himself recognized in matter of LABR that it can be wasteful and inefficient for immigration judges to plow ahead immediately with a removal hearing when there's pending matters that could impact the removal process. And so that's why the immigration judge granted a continuance. He took a peek at the merits consistent with the governing regulations regarding continuances and saw that it potentially had merit. And so in a normal situation, the district court proceedings would play out while the removal proceedings are paused. And that's a longstanding practice. It respects the administrative process. The third point is on the legislative history. I think Mr. Press mentioned that B-9 was amended in 2005. And actually, I think that undercuts the district court and the government's position because, again, the settled understanding in the federal courts has been that jurisdiction is in district court for these challenges. And so the fact Congress amended the B-9 in 2005 and yet didn't see fit to change, to add any language to expressly cover district court opinions, I think, speaks to the fact that it doesn't cover them. And the final point is about Mr. Archila's pending adjustment application. Yes, it's true that the beneficiaries of visa petitions can seek alternative relief in removal proceedings, but companies that petition for their foreign workers shouldn't be beholden to the beneficiary of the visa petition to get review of their petition in court. Their day in court shouldn't be dependent on the beneficiary seeking relief in immigration proceedings. If there are no further questions, we'd ask that you reverse and remand to the district court to consider the claims on the merits. Thank you, Mr. Ramos.